■ NAIDA I. VELAZQUEZ, Appellant, v BRUNO DECAUDIN et al., Defendants, and ARNOLD STREISFELD et al., Respondents. [854 NYS2d 163]—

The plaintiff commenced this action against various parties involved in, inter alia, the conveyance of certain real property owned by her decedent. Alleging that the defendants collectively conspired to defraud the plaintiff's decedent of certain real property by fraudulently inducing her son, the defendant Jose L. Velazquez, Jr. (hereinafter Jose), to transfer title to the property to the defendant Bruno Decaudin, the complaint asserts causes of action sounding in, among other things, negligence, fraud, and legal malpractice and seeks judgment setting aside the deed by which the property was conveyed, canceling the mortgages Decaudin gave with respect to the premises subsequent to the conveyance, and awarding damages.

The defendants Arnold Streisfeld, Ira S. Clair and Clair and Gjertsen, and United General Title Insurance Company (hereinafter UGT) separately moved pursuant to CPLR 3211 (a) (7) to dismiss the complaint insofar as asserted against them for failure to state a cause of action. In the order appealed from dated September 25, 2006, the Supreme Court granted their respective motions. Subsequently, HSBC Bank USA, N.A. (hereinafter HSBC), the holder of the Decaudin mortgages by assignment, moved for leave to intervene in this action or, alternatively, to be substituted as the successor in interest to the defendant Mortgage Electronic Registration Systems, Inc. (hereinafter MERS). In the order appealed from dated January 10, 2007 the Supreme Court granted that branch of HSBC's motion which was for leave to intervene.

In considering a motion to dismiss pursuant to CPLR 3211 (a) (7), the court should accept the facts alleged in the complaint as true, affording the plaintiff the benefit of every possible favorable inference and determining only whether the facts as alleged fit within any cognizable legal theory (*see Leon v Martinez*, 84 NY2d 83, 87-88 [1994]; *Goldfarb v Schwartz*, 26 AD3d 462, 463 [2006]; *Fast Track Funding Corp. v Perrone*, 19 AD3d 362, 362-363 [2005]). Applying that standard here, the complaint insofar as asserted against Streisfeld and UGT should not have been dismissed.

The complaint alleges, insofar as is relevant here, that Jose, believing, on the basis of misrepresentations by certain of the defendants, that he was refinancing to save his mother's property from foreclosure, entered into a contract to convey the property to Decaudin for $390,000. The property allegedly was worth $600,000 at the time. When the closing was scheduled, Jose allegedly was advised that only he had to attend the closing, but that he should bring with him his mother's social security card and driver's license. At the closing he allegedly was introduced to Streisfeld, and was told that Streisfeld was his attorney.

The complaint alleges that, prior to the closing, Streisfeld had been provided with a copy of the power of attorney by which Jose was purporting to act in connection with the closing. The power of attorney, which had been executed by Jose's mother, appointed Jose and his sister, the plaintiff Naida I. Velazquez, acting jointly, as attorneys-in-fact for their mother. Despite the requirement that Jose and the plaintiff act together, however, the complaint alleges that Jose acted alone in connection with the conveyance of the property and that the plaintiff was unaware of his actions in that regard.

According to the complaint, the closing proceeded only after a lengthy meeting, from which Jose was excluded, between Streisfeld, the representative of the defendant Old Town Abstract Company, LLC (hereinafter Old Town), which was the agent of UGT, and the mortgage brokers, financial advisors, and other attorneys involved in the transaction. When the closing did proceed, Jose was taken into a room separate from the other participants, where he was advised that he was required to execute a deed, as well as a use and occupancy agreement and an option to purchase agreement. The use and occupancy agreement provided that Jose, who resided elsewhere, could continue to reside in the premises for a period of 12 months as long as he paid Decaudin's mortgage payments in a timely fashion during that period. The option-to-purchase agreement provided that as

long as he did not default in his obligations under the use and occupancy agreement, Jose could purchase the property during that year for $370,500, which was the total amount of the two mortgages that Decaudin executed in favor of the defendant Sunset Mortgage Company at the closing.

The complaint further alleges that, at the closing, Jose, Decaudin, Streisfeld, and the attorney for the lender executed an escrow agreement, pursuant to which no funds were to be disbursed, no documents were to be recorded, and no title insurance was to be issued until an original power of attorney in favor of Jose had been delivered to Old Town. The escrow agreement further provided that if the power of attorney were not delivered, the closing documents were to be returned to the respective parties. The complaint alleges that even though the power of attorney was never delivered to Old Town, the funds were disbursed and the closing documents were not returned, but were recorded, and UGT issued a policy of title insurance. The complaint alleges that the closing documents reflect that Decaudin paid approximately $295,000 to satisfy the outstanding mortgage indebtedness on the property and that the remaining $95,000 that had been borrowed from Sunset was disbursed to the defendants, rather than to the owner of the property, the plaintiff's decedent.

Several months later, Jose defaulted in his obligations under the use and occupancy agreement that was executed at closing and Decaudin initiated a summary dispossess proceeding, in which he was represented by the defendants Ira S. Clair, an attorney, and Clair and Gjertsen (hereinafter collectively Clair). The proceeding resulted in the issuance of a judgment in favor of Decaudin and a warrant of eviction. The complaint alleges that in a motion to vacate the judgment and warrant, Clair was made aware of the alleged defect in Decaudin's title but negligently failed to examine the relevant documents or do anything else to ascertain the true state of Decaudin's title.

In support of his motion to dismiss, Streisfeld argues that he had no attorney-client relationship with the plaintiff and, therefore, cannot be the subject of her malpractice claim as asserted in the plaintiff's sixth cause of action. "[A]bsent fraud, collusion, malicious acts or other special circumstances, an attorney is not liable to third parties, not in privity, for harm caused by professional negligence" (*Conti v Polizzotto*, 243 AD2d 672, 672 [1997], quoting *Estate of Spivey v Pulley*, 138 AD2d 563, 564 [1988]; *see AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 5 NY3d 582, 595 [2005]; *Fredriksen v Fredriksen*, 30 AD3d 370, 372 [2006]; *Rovello v Klein*, 304 AD2d 638 [2003]).

The complaint alleges that Streisfeld was retained by defendants other than Jose to act as Jose's attorney. Attached to the complaint, however, is a copy of the escrow agreement that was executed at the closing by Streisfeld on the line identified as "Seller's Attorney." The escrow agreement refers to Jose and the plaintiff as the sellers, but the deed that was executed at the closing identifies their mother, the plaintiff's decedent, as the seller. In light of this, the complaint sufficiently alleges the existence of an attorney-client relationship between the plaintiff and Streisfeld and the Supreme Court therefore erred in dismissing the sixth cause of action on the ground that no such relationship had been pleaded.

Similarly, as to UGT, "a title company hired by one party is not, absent evidence of fraud, collusion, or other special circumstances, subject to suit for negligent performance by one other than the party who contracted for its services" (*Calamari v Grace,* 98 AD2d 74, 83 [1983]; *see Sabo v Alan B. Brill, P.C.,* 25 AD3d 420, 421 [2006]). There is no allegation that the plaintiff had any relationship or contact with UGT. Nevertheless, "[o]ne who aids and abets a breach of a fiduciary duty is liable for that breach as well, even if he or she had no independent fiduciary obligation to the allegedly injured party, if the alleged aider and abettor rendered 'substantial assistance' to the fiduciary in the course of effecting the alleged breaches of duty" (*Caprer v Nussbaum,* 36 AD3d 176, 193 [2006], citing *Wechsler v Bowman,* 285 NY 284, 290 [1941]; *see Kaufman v Cohen,* 307 AD2d 113, 125 [2003]; *DePinto v Ashley Scott, Inc.,* 222 AD2d 288, 290 [1995]; *Fallon v Wall St. Clearing Co.,* 182 AD2d 245, 251 [1992]; *Marcus v Marcus,* 92 AD2d 887 [1983]).

Moreover, privity is not required to assert a claim based on fraud or intentional misconduct (*see Ultramares Corp. v Touche,* 255 NY 170, 179, 189 [1931]; *Caprer v Nussbaum,* 36 AD3d at 195; *Houbigant, Inc. v Deloitte & Touche,* 303 AD2d 92, 95 [2003]; *Bank of Tokyo Trust Co. v Friedman,* 197 AD2d 354 [1993]). Since the complaint alleges that Streisfeld and the agent for UGT either aided or participated in a scheme to defraud, the Supreme Court erred in dismissing the first, second, third, fourth, and fifth causes of action insofar as asserted against Streisfeld and UGT.

There are no such allegations, however, with respect to Clair, who is alleged to have become involved in this matter when retained to pursue a summary proceeding to recover possession of the property after Jose had defaulted under the use and occupancy agreement. The factual allegations of the complaint with respect to Clair are only that when the apparent problems

with Decaudin's title were brought to Clair's attention, Clair failed to investigate to ascertain the true state of title. Since there was no attorney-client relationship between Clair and the plaintiff, Clair had no duty to the plaintiff (*see AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.,* 5 NY3d at 595; *Fredriksen v Fredriksen,* 30 AD3d at 372; *Rovello v Klein,* 304 AD2d 638 [2003]; *Conti v Polizzotto,* 243 AD2d at 672). Moreover, there are no factual allegations to support the claim that Clair participated in or aided or abetted the alleged scheme to defraud the plaintiff by rendering "substantial assistance" to Streisfeld, UGT, or even Jose. The Supreme Court therefore correctly granted Clair's motion to dismiss the complaint insofar as asserted against Clair (*see Caprer v Nussbaum,* 36 AD3d at 193).

The Supreme Court also properly granted that branch of HSBC's motion which was for leave to intervene in this action (*see* CPLR 1012 [a] [3]; *Greenpoint Sav. Bank v McMann Enters.,* 214 AD2d 647, 647-648 [1995]).

The plaintiff's remaining contention is without merit. Spolzino, J.P., Santucci, Angiolillo and Balkin, JJ., concur.